**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALLIED PAINTING & DECORATING, INC., | Civil Action No. 21-13310 (RK) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, | |
| Defendant. | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff Allied Painting & Decorating, Inc.'s ("Allied") reinstated and supplemented motion for attorney fees and expenses (Docket Entry No. 72) and Defendant International Painters and Allied Trades Industry Pension Fund's (the "Fund") motion to strike Allied's reply brief filed in further support of its motion for attorney fees and expenses (Docket Entry No. 78). The Fund has opposed Allied's motion for attorney fees and expenses, and Allied has opposed the Fund's motion to strike. The Court has fully reviewed and considered all arguments made in support of and in opposition to both motions. The Court considers both motions without argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, both motions are DENIED.

**I.      Background and Procedural History**

The factual background of this matter is well known to both the parties and the Court. As such, it is not restated at length herein. Instead, the Court focuses on the procedural history and only those facts most relevant to the pending motions.

This matter involves an appeal from an arbitration award in the amount of $427,195.00 in favor of the Fund and against Allied. The award was premised on Allied being subject to withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. §§ 1381-1461. The parties brought competing dispositive motions before the District Court through which the Fund sought to confirm the arbitration award (Docket Entry No. 31) and Allied sought to vacate the award (Docket Entry No. 34). In considering the parties' motions, the District Court stated, "In this case, there is one issue – whether withdrawal liability is barred by laches after an approximate 10-year delay between the resumption of work after withdrawal by Allied, and the time of notification by the Fund to Allied that is subject to withdrawal liability." (Mem. and Order of 03/01/2023 at 2; Docket Entry No. 64). Further, the District Court noted that while "the arbitrator found there was a very prolonged unreasonable delay by the Fund of its notification of withdrawal liability to Allied . . . since Allied showed no prejudice, its laches objection was denied." (*Id*. (citation omitted)). Ultimately, on March 1, 2023, the District Court vacated the arbitrator's award against Allied, determining that for several reasons, the arbitrator exhibited "a reasonable appearance of bias against Allied" which resulted in the "deprivation of a fair hearing." (*Id*. at 38).

On March 24, 2023, the Fund filed a Notice of Appeal regarding the District Court's decision. (Docket Entry No. 65). On March 29, 2023, the parties stipulated to an extension of time by which Allied had to file its application for attorneys' fees under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1451(e) until April 21, 2023 (Docket Entry No. 66), which the Court granted on March 29, 2023 (Docket Entry Nos. 67 and 68). On April 6, 2023, amongst other relief, Allied sought to toll the deadline for its anticipated attorneys' fee application until all appeals had been exhausted. (*See* Docket Entry No. 70). While the Fund consented to

Allied's request to toll the deadline for its attorneys' fee application (*see* Docket Entry No. 71), Allied filed its motion for attorney fees and expenses prior to the District Court ruling on Allied's request to toll said deadline. (*See* Docket Entry No. 72).

On April 27, 2023, the parties submitted a proposed modified briefing schedule regarding Allied's motion for attorney fees and expenses to the Court (Docket Entry No. 73), which the District Court entered on the same day.  Letter Order of 04/27/2023; Docket Entry No. 74. According to the modified schedule, the Fund's opposition brief was due to be filed on May 22, 2023 and Allied's reply on June 13, 2023. *Id*. The Fund timely filed its opposition on May 22, 2023. (Docket Entry No. 75). On June 7, 2023, Allied, with the consent of the Fund, requested an extension of time to file its reply until June 26, 2023. (*See* Docket Entry No. 76). Allied filed its reply on June 27, 2023. (Docket Entry No. 77). Because Allied filed its reply brief a day after the consented to June 26th deadline, the Fund moved to strike Allied's reply brief. (Docket Entry No. 78). Allied opposed the Fund's motion to strike.

On December 6, 2023, the District Court administratively terminated Allied's motion for attorney fees and expenses and the Fund's motion to strike pending a decision from the Third Circuit Court of Appeals on the Fund's appeal of the District Court's decision vacating the arbitrator's award against Allied. *See* Text Order of 12/06/2023; Docket Entry No. 83. The District Court indicated that both motions would be reopened after the Third Circuit rendered its decision. *Id*.

On July 11, 2024, the Third Circuit issued a Judgment, affirming the Order of the District Corut entered on March 1, 2023 (Docket Entry No. 84), and, on August 14, 2024, the Third Circuit issued its Mandate and Opinion regarding same. (Docket Entry No. 87).  On September 11, 2024, the District Court entered an Order implementing the Third Circuit's Mandate. (Docket Entry No.

93). Given the decision rendered by the Third Circuit, on October 7, 2024, the District Court reopened Allied's motion for attorney fees and expenses and the Fund's motion to strike and referred them, along with all decisions concerning supplemental briefing, to the undersigned for consideration. *See* Text Order of 10/07/2024; Docket Entry No. 95.

This Court conducted a status conference to discuss the aforementioned motions on November 26, 2024. Considering the passage of time, the Court determined that it would afford the parties an opportunity to supplement / revise their submissions with respect to Allied's motion for attorney fees and expenses and set a briefing schedule for same. *See* Text Minute Entry of 11/26/2024. In the interim, the Court administratively terminated Allied's motion for attorney fees and expenses and the Fund's motion to strike. *Id*.

The parties submitted their supplemental briefing according to the schedule set by the Court.[1] When briefing was completed, rather than immediately reinstating the parties' motions, the Court engaged in *ex parte* settlement discussions with the parties. *See* Text Order of 07/18/2025; Docket Entry No. 101. Unfortunately, these settlement discussions proved unsuccessful. As a result, on September 3, 2025, the Court reinstated Allied's motion for attorney fees and expenses and the Fund's motion to strike. Text Order of 09/03/2025; Docket Entry No. 102.

---

[1] On September 29, 2025, the Fund submitted *RTI Restoration Techs., Inc. v. Int'l Painters and Allied Trades Indus. Pension Fund*, Civil Action No. 22-02364, 2025 WL 2753545 (D.N.J. Sept. 26, 2025), which wasn't decided until almost 7 months after the Fund's supplemental opposition was due, as an additional supplemental authority to be considered by the Court.

4

## II.   Motion to Strike

According to L.Civ.R. 7.1(d)(7), "The Court may reject any brief or other paper not filed within the time specified." Deciding whether to do so rests in the Court's broad discretion. *See United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) (noting that "[a]s we have often said, matters of docket control and discovery are committed to [the] broad discretion of the district court"); *Gerald Chamles Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]")

Here, while Allied was already provided an extension of time to file its reply in further support of its motion for attorney fees and expenses and while Allied does not provide a strong justification for failing to comply with the already extended filing deadline, the Court finds that its one-day delay in filing its reply was not prejudicial to the Fund. As a result, "[u]nder the Court's discretion relating to scheduling and case management," the Court shall accept and consider the late reply. *Gov't Emp. Ins. Co. v. Active Med. Care, P.C.*, Case No. 2:24-cv-10909 (BRM) (JRA), 2026 WL 74193, 3 (D.N.J. Jan. 9, 2026). The Fund's motion to strike is therefore DENIED.

## III.   Motion for Attorney Fees and Expenses

### A.  Legal Standard

Both Allied and the Fund agree that for actions for withdrawal liability such as the Fund's, "the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." 29 U.S.C. § 1451(e). The parties, however, hotly dispute what standard the Court should apply in determining whether to grant this discretionary award of attorney's fees and expenses to Allied in this matter. Allied argues that the five-factor test outlined in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983)

5

should apply. In contrast, the Fund argues that the standard set forth in *Dorn's Transp., Inc. v. Teamsters Pension Tr. Fund of Philadelphia & Vicinity*, 799 F.2d 45, 47 (3d Cir. 1986) is applicable here.

While Allied is correct that the five policy factors outlined in *Ursic* are considered by courts in determining whether to make an award of attorney's fees under ERISA, Allied's reliance on *Ursic* in the context of this case is misplaced given the specific provisions of ERISA at issue here, namely the MPPAA. The MPPAA was not at issue in the *Ursic* matter, which instead involved a request for attorney's fees based on an employee's successful claim under § 510 of ERISA to recover past and future pension benefits. *See Ursic*, 719 F.2d at 672-73.

In contrast, the Third Circuit in *Dorn* specifically considered the successful employers' request for attorneys' fees under the fee-shifting provision of the MPPAA. Indeed, the *Dorn* opinion opens stating, "This opinion addresses a motion for attorneys' fees made pursuant to 29 U.S.C. § 1451(e). the fee-shifting provision of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, which modified the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The motion papers require us to determine the standard for an award of attorneys' fees under MPPAA to employers who prevail in a suit seeking a determination of their withdrawal liability thereunder." *Dorn*, 799 F.2d at 46. In making this determination, the Third Circuit reflected seriously on the underlying policy considerations of the MPPAA noting:

> When an employer prevails in an MPPAA suit, it does not win a judgment against a violator of federal law. Rather, the losing plan is an entity that was attempting, however, misguidedly, to *enforce* federal law, as well as to fulfill its duty to the plan beneficiaries. A liberal standard for awarding fees to prevailing employers may in fact undermine the purpose of MPPAA and discourage plan trustees from performing their fiduciary duties, for it could deter pension plans from bringing suits to recover withdrawal liability. . . . As our

6

> discussion suggests, the stricter standard adopted for civil rights *defendants* in *Christiansburg* is far better suited to the equities and realities of this situation.

*Id*. at 49-50 (citations omitted). After doing so, the Third Circuit unequivocally held that "the standard for awarding attorneys' fees to prevailing employers under the fee-shifting provisions of MPPAA, 29 U.S.C. § 1451 (e) is the one set forth in *Christiansburg* with respect to awards to prevailing Title VII defendants." *Id*. at 50. In other words, a prevailing employer "is entitled to attorneys' fees only if the Plan's assessment of withdrawal liability was frivolous, unreasonable or without foundation." *Id*. (citation omitted).

Dorn remains the applicable Third Circuit precedent for determining whether to award attorneys' fees and expenses to a prevailing employer under the fee shifting provisions of the MPPAA. *See RTI Restoration*, 2025 WL 2753545 at *2 (noting that "[i]n the Third Circuit, prevailing employers in an MPPAA action are entitled to attorneys' fees 'only if the Plan's assessment of withdrawal liability was frivolous, unreasonable or without foundation.'") (quoting *Dorn*, 799 F.2d at 47 (citation omitted)); *Roofers Loc. No. 30 Combined Pension Fund v. D.A. Nolt, Inc.*, 719 F.Supp. 2d 530, 557 n. 4 (E.D. Pa. 2010), *aff'd*, 444 F.App'x 571 (3d Cir. 2011) (same). As such, it is the standard this Court shall use in considering Allied's pending motion for attorney fees and expenses.

Whether the assessment of withdrawal liability was frivolous, unreasonable or without foundation is a determination the Court makes "'on a case-by-case basis.'" *See E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997) (quoting *Sullivan v. School Bd.*, 773 F.2d 1182, 1189 (11th Cir. 1985))). Importantly, that phrase implies that the plaintiff's assessment of withdrawal liability was "groundless . . . rather than simply that the plaintiff has ultimately lost his case." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

7

While "[t[he demand for withdrawal liability need not have been made in bad faith to be considered frivolous, unreasonable or without foundation[,]" there needs to be some suggestion that the claim "was completely devoid of merit" and the mere fact that a Plan does not prevail is insufficient. *Dorn*, 799 F.2d at 50.

In determining whether the assessment of withdrawal liability was frivolous, unreasonable or without foundation, "'courts should consider several factors including (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Roab v. City of Ocean City, New Jersey*, 833 F.3d 286, 297 n.6 (3d Cir. 2016) (quoting *L.B. Foster*, 123 F.3d at 751) (quotation marks omitted). Further, courts should also consider whether the matter involves "a case of first impression in this circuit, rather than one involving the application of settled principle" in determining whether the assessment of withdrawal liability was frivolous, unreasonable or without foundation. *Dorn*, 799 F.2d at 50; *see Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001) (noting that courts may consider "whether the question in issue was one of first impression requiring judicial resolution" in determining if plaintiff's action was frivolous, unreasonable or without foundation). Similarly, courts may consider whether "the controversy is based upon a real threat of injury to the plaintiff" when making this determination. *Barnes*, 242 F.3d at 158. All "[t]hese factors are, however, guideposts, not hard and fast rules." *RTI Restoration*, 2025 WL 2753545 at *2. Of utmost importance, the Court must avoid the "temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22.

## B. Analysis

Under the circumstances presented here, the Court finds that the Fund's assessment of withdrawal liability was not frivolous, unreasonable or without foundation. As outlined by the Third Circuit in its opinion on the Fund's appeal in this matter, there are:

> [T]hree steps for a fund to assert a withdrawal-liability claim:
>
> Step One: The employer must withdraw from the plan. *See* 29 U.S.C. §§ 1381, 1383.
>
> Step Two: "As soon as practicable" after withdrawal, the fund must A) provide notice to the employer of its withdrawal-liability assessment and B) demand payment from the employer. *Id*. § 1399(b)(1).
>
> Step Three: The employer must default on a payment "due and payable." *See Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 202, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997).

*Allied Painting & Decorating, Inc. v. Int'l Painters and Allied Trades Indus. Pension Fund*, 107 F.4th 190, 197 (3d Cir. 2024).

However, prior to the Third Circuit's decision on the Fund's appeal, it was generally understood that with respect to step two, even where there was a delay in a fund asserting a payment demand, an employer would still have to raise a laches objection, establishing that the delay resulted from a "lack of diligence by the party against whom the defense [wa]s asserted" and that the delay was "prejudice[ial] to the party asserting the defense[,]" to avoid withdrawal liability. *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 Led. 2d 551 (1961) (internal quotation marks omitted)). Indeed, at arbitration, Allied objected to the Fund's demand for payment based on laches. Furthermore, the arbitrator's decisions were focused on Allied's laches defense: while the arbitrator concluded that "the Fund did not act 'as soon as practicable' in issuing a notice and

9

demand to Allied and that the Fund's delay was unreasonable[,]" the arbitrator also determined that "Allied failed to establish severe or material prejudice, which doomed its laches defense." *Allied Painting*, 107 F.4th at 194-195.

Likewise, the District Court in considering the parties' competing motions regarding the arbitrator's decision understood the issue to be whether laches barred the Fund's demand for payment. Indeed, in its Memorandum and Order on said motions, the District Court explicitly stated, "In this case, there is one issue – whether withdrawal liability is barred by laches after an approximate 10-year delay between the resumption of work after withdrawal by Allied, and the time of notification by the Fund to Allied that is subject to withdrawal liability." (Mem. and Order of 03/01/2023 at 2). Ultimately, "the District Court found that Allied was prejudiced by the delay and vacated the Award." *Allied Painting*, 107 F.4th at 195.

Thus, the parties, arbitrator, and District Court all understood that the critical question in this matter was whether laches applied as a bar to Allied's withdrawal liability and, more specifically, whether Allied was prejudiced by the Fund's approximate 10-year delay in notifying Allied that it was subject to withdrawal liability. It was not until the Third Circuit issued its decision on the Fund's appeal that it became clear that prejudice and, indeed the laches defense, have no place in the withdrawal liability calculus:

> But the "as soon as practicable" requirement is not the same as a laches defense. Section 1399(b)(1) addresses not the unreasonable, prejudicial delay in starting a suit; it requires prompt delivery of notice and payment demand as a predicate to suing. Where the fund has not sent notice and demanded payment "as soon as practicable" after the employer's withdrawal, the fund has not satisfied its requirements under § 1399(b)(1). The contrary reading would render the "as soon as practicable" requirement of § 1399(b)(1) meaningless.
>
> The Arbitrator concluded that "the Fund did not act ['as soon as practicable' in issuing an assessment of withdrawal liability in 2017

10

with respect to a withdrawal which had occurred no later than 2006. App. 107, 121. The District Court did not disturb this conclusion, and neither party disputes it. That is the end of the case, since the Arbitrator's conclusion that the 'as soon as practicable' requirement was not met means the requirements of the MPPAA are also lacking.

The Arbitrator's error in requiring prejudice not present in the MPPAA warrants vacating the Arbitration Award. That a fund provide notice of its withdrawal-liability assessment and demand payment from the employer "as soon as practicable" following the employer's withdrawal is a requirement of § 1399(b)(1). If this statutory requirement is not met, the fund's claim for the employer's withdrawal liability must fail.

The "as soon as practicable" requirement under § 1399(b)(1) is an independent statutory requirement, and it was not met here. So the Fund cannot recover the withdrawal-liability amount from Allied under the MPPAA[.]

*Id*. at 198-99.

The Court finds that this represents a significant shift in the law that could not have been reasonably anticipated or foreseen by the Fund. *See RTI*, 2025 WL 2753545, at *4 (noting "The Court is therefore skeptical of Plaintiff's argument that the state of the law before *Allied* was as obvious as they now assert it was."). As a result, while the Fund ultimately did not prevail, under the circumstances presented, the Court finds that the Fund's assessment of withdrawal liability was not frivolous, unreasonable or without foundation. As a result, Allied's motion for attorney fees and expenses is DENIED.

## IV.    Conclusion

For the reasons stated above, Allied's motion for attorney fees and expenses and the Fund's motion to strike are DENIED.  An appropriate Order follows.

Dated: April 29, 2026

                           _____s/Tonianne J. Bongiovanni_____
                           **HONORABLE TONIANNE J. BONGIOVANNI**
                           **UNITED STATES MAGISTRATE JUDGE**