**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALLIED PAINTING & DECORATING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND,<br><br>Defendant. | Civil Action No. 21-13310 (RK) (TJB)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the Report and Recommendation ("R&R," ECF No. 104)[1] of the Honorable Tonianne J. Bongiovanni, U.S.M.J., which recommended denying Plaintiff Allied Painting & Decorating, Inc.'s ("Allied") motion for attorney's fees. Allied objected to the R&R, (ECF No. 107), and submitted a memorandum in support of its objections, ("Obj.," ECF No. 108). Defendant International Painters and Allied Trades Pension Fund ("the Fund") opposed, (ECF No. 109), and Allied replied, ("Reply," ECF No. 110). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, the recommendation of the R&R is **ADOPTED**, and the motion for attorney's fees is **DENIED**.

[1] Consistent with the parties' agreement during the telephone conference held on August 19, 2026, (ECF No. 112), the Court construes Judge Bongiovanni's Memorandum Opinion and Order (ECF Nos. 104–05) as a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (*See* ECF No. 113 ("Both parties consent to this procedure, and both parties agree that no additional briefing is necessary.").)

# I. BACKGROUND

## A. Legal Context

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, broadly regulates private multiemployer pension plans. When one of these plans becomes underfunded and a participating employer decides to withdraw, that employer is subject to "withdrawal liability" under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.*[2] Withdrawal liability, in short, is a charge to a withdrawing employer for its "share of the plan's unfunded vested benefits." *M & K Emp. Sols., LLC v. Trs. of IAM Nat'l Pension Fund*, 608 U.S. 264, 268 (2026); *see* 29 U.S.C. §§ 1381(a), 1391(a). By way of enforcement, Section 1451(a) permits fiduciaries of underfunded multiemployer pension plans to bring an action against a withdrawing employer to recover this outstanding liability, provided various statutory prerequisites under the MPPAA are satisfied. *See* 29 U.S.C. § 1451(a). Relevant among those prerequisites, Section 1399(b) requires that the plan sponsor issue an assessment of withdrawal liability "[a]s soon as practicable" after an employer's withdrawal. *Id.* § 1399(b)(1). The MPPAA also "expresses a clear preference for self-regulation through arbitration" before pursing relief in federal court, although this is not a "*per se* exhaustion requirement." *RTI Restoration Techs., Inc. v. Int'l Painters & Allied Trades Indus. Pension Fund*, 169 F.4th 140, 146 (3d Cir. 2026) (quotations omitted). Generally, after arbitration, either party may bring an action in the District Court "to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2). At the conclusion of such an action, the District Court "may," in its discretion, issue an award of attorney's fees to the "prevailing party." *Id.* § 1451(e).

---

[2] Congress enacted the MPPAA to better "protect the financial solvency of multiemployer pension plans." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 196 (1997).

## B. Present Dispute

From 2001 to 2005, Allied, a painting company, contributed to the Fund, a nationwide multiemployer pension plan with more than 30,000 contributing employers. (ECF No. 42 ¶ 1; ECF No. 36 ¶ 1.) At some time during the 2005 plan year, Allied ceased contributing to the Fund and incurred withdrawal liability in the amount of $427,195. (ECF No. 36 ¶ 2(b).) However, the Fund did not send a demand letter notifying Allied of this liability until July 20, 2017, approximately twelve years after its withdrawal. (*Id.* ¶ 12.) Allied requested review of the Fund's demand letter on October 9, 2017. (*See id.* ¶ 52.) When the Fund ultimately declined to withdraw its statement of liability, Allied timely requested arbitration on March 29, 2018, which the parties underwent. (*Id.* ¶¶ 52–54; *see* ECF No. 43 ¶ 53.) During the arbitration proceedings, Allied objected on grounds that the Fund's withdrawal liability assessment was barred by the doctrine of laches and the MPPAA's "as soon as practicable" requirement. (*See* ECF No. 38-38 at 1); 29 U.S.C. § 1399(b)(1).

When Allied made this laches objection, many courts understood Section 1399(b)'s "as soon as practicable" requirement to be legally coextensive with laches.[3] In practice, this meant a plan's failure to issue an assessment "as soon as practicable" would not necessarily foreclose its withdrawal liability claim unless the employer established both prongs of a laches defense—*i.e.*, that (1) the plan sponsor unreasonably delayed bringing its claim, and (2) the withdrawing employer suffered prejudice as a result of that delay. *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th

---

[3] *See, e.g.*, *Gant v. Advanced Elec., Inc.*, No. 16-1954, 2017 WL 3638762, at *4 (D.N.J. Aug. 23, 2017) (equating employer's "defense of laches" to its argument that the fund "failed to provide notice of withdrawal liability '[a]s soon as practicable,' as required by 29 U.S.C. § 1399"); *Pavers & Road Builders Dist. Council Pension Fund by Montelle v. Nico Asphalt Paving, Inc.*, 248 F.Supp.3d 374, 380 (E.D.N.Y. 2017) (stating defendant's timeliness objection under § 1399(b) was "subsumed by its laches defense"); *Clarson v. Scorpio Excavating, Inc.*, No. 19-5488, 2020 WL 5545694, at *4 (N.D. Ill. Sept. 16, 2020) (equating employer's argument "that the Fund did not follow the statutory requirement of notifying [the employer] 'as soon as practicable'" with "rais[ing] laches as a defense").

209, 220 (3d Cir. 2021). It was against this legal backdrop that the Arbitrator ruled in favor of the Fund despite finding the Fund had failed to issue its withdrawal liability assessment "as soon as practicable" as required by Section 1399(b). (*See* ECF No. 5 at 55 ("While the Fund did not act "as soon as practicable" in issuing an assessment of withdrawal liability in 2017 . . . Allied has not shown that it has been prejudiced in the overall defense of this case by the Fund's delay.").) The Arbitrator reached this decision because, in its view, Allied had not shown it suffered prejudice as a result of the Fund's twelve-year delay—a finding which doomed Allied's laches defense and thus any timeliness objection under Section 1399(b). (*See id.* at 51–55.) On June 4, 2021, the Arbitrator rendered a final award in favor of the Fund. (*See id.* at 28.) The parties thereafter brought competing motions under 29 U.S.C. § 1401(b)(2) before the Honorable Peter G. Sheridan, U.S.D.J. (ret.), through which the Fund sought to confirm the award (ECF No. 31) and Allied to vacate it (ECF No. 34).

On March 3, 2023, the District Court vacated the award based on its determination that the Arbitrator exhibited "a reasonable appearance of bias against Allied." (ECF No. 64 at 38.) Among the six reasons set out by the District Court in support of this conclusion, five related in some form to the Arbitrator's finding that Allied had not suffered prejudice—a finding which the District Court determined was unsupported by the factual record and applicable case law. (*Id.* at 32–37.) The District Court did not, however, disagree with or otherwise disturb the Arbitrator's finding that the Fund did not issue its assessment "as soon as practicable" under Section 1399(b), and neither party contested this finding. (*See id.* at 4–5 ("[N]o party petitioned to vacate or confirm the Arbitrator's finding that the Fund unreasonably delayed in pursuing the withdrawal liability").)

The Fund timely appealed this decision, (ECF No. 65), but before the Third Circuit could render a decision, Allied moved for $343,197 in attorney's fees and $8,862.49 in costs pursuant to

Section 1451(e), the MPPAA's fee-shifting provision. (ECF Nos. 72, 72-1 at 1.) This prompted the parties to submit extension requests, proposed briefing schedules, and some preliminary briefing in relation to that motion. (*See* ECF Nos. 73–78, 80.) Given the Fund's pending appeal, the District Court stayed consideration of the motion until the Third Circuit rendered its decision. (ECF No. 83.)

On July 11, 2024, the Third Circuit affirmed the decision to vacate the award, but on different grounds. *Allied Painting & Decorating, Inc. v. Int'l Painters & Allied Trades Indus. Pension Fund*, 107 F.4th 190 (3d Cir. 2024). In its decision, the Third Circuit clarified that "[Section 1399(b)'s] 'as soon as practicable' requirement' is *not* the same as a laches defense" and, therefore, contains no prejudice requirement. *Id.* at 198 (emphasis added). Having clarified that Section 1399(b) would now independently bar an untimely withdrawal liability assessment without the need to show prejudice, the Third Circuit concluded the Fund's claim failed as a matter of law because neither party had challenged the Arbitrator's finding that the Fund failed to issue its assessment "as soon as practicable." *Id.* at 198–99. Accordingly, the Third Circuit affirmed the decision to vacate the award on this new basis. *Id.* at 199.

This case was reassigned to the undersigned following the Third Circuit's decision. (ECF No. 88.) After this Court implemented the mandate of the Third Circuit, (ECF No. 93), it reopened Allied's motion for attorney's fees and referred the matter to the Honorable Tonianne J. Bongiovanni, U.S.M.J., (ECF No. 95). On April 29, 2026, Judge Bongiovanni issued her R&R recommending the Court deny Allied's motion for attorney's fees. (ECF Nos. 104–05.) This matter has been fully briefed and is ripe for decision.

## II. LEGAL STANDARD

Local Civil Rule 72.1 allows a party to object to a magistrate judge's report and

recommendation within fourteen (14) days of service. L. Civ. R. 72.1(c)(2). The objection "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." *Id.* Upon a party's objection, the district court "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id.*; *see also Kenny v. United States*, 489 F. App'x 628, 630 n.2 (3d Cir. 2012) ("Upon objection, the district court reviews the magistrate court's dispositive recommendations *de novo*." (cleaned up)). "As to uncontested portions of the report, the district court has discretion to choose an appropriate standard of review. At a minimum, what is not objected to, the district court reviews under the plain error or manifest injustice standard." *Brainbuilders, LLC v. Optum, Inc.*, No. 18-638, 2019 WL 2315389, at *2 (D.N.J. May 31, 2019) (internal quotation marks and citation omitted). Because the Court adopts Judge Bongiovanni's thorough, well-reasoned R&R in its entirety regardless of the standard of review applied, the Court reviews all aspects of the R&R *de novo*.

## III. DISCUSSION

Allied's objections to the R&R are twofold. First, Allied claims that Judge Bongiovanni erred by evaluating its motion under the Third Circuit's decision in *Dorn's Transp., Inc. v. Teamsters Pension Tr. Fund of Phila. & Vicinity*, 799 F.2d 45, 47 (3d Cir. 1986), and argues the R&R should have instead applied the Third Circuit's five-factor test under *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983). (Obj. at 2–3.) Second, Allied argues in the alternative that the R&R erred because, even under the *Dorn's* standard, Allied is entitled to an award of fees. (*Id.* at 3–4.) The Court considers each objection in turn.

### A. The R&R Employed the Correct Standard Under *Dorn's*

Allied's underlying action to vacate the Arbitrator's award was brought pursuant to 29 U.S.C. § 1451(a)(1) and therefore implicates Section 1451(e), the MPPAA's fee-shifting provision. (ECF No. 5 ¶¶ 144–45); *see* 29 U.S.C. § 1401(b)(2) (permitting either party to bring an action "in accordance with [S]ection 1451 . . . to enforce, vacate, or modify the arbitrator's award"). Under this provision, "the court may award all or a portion of the costs and expenses . . . including reasonable attorney's fees, to the prevailing party" in a withdrawal liability action brought pursuant to Section 1451. 29 U.S.C. § 1451(e). The Third Circuit has explained that "Section 1451 is a flexible provision, which allows an award to either prevailing plaintiffs or prevailing defendants and leaves the decision whether to grant an award to the discretion of the district court." *Dorn's*, 799 F.2d at 47.

There is no dispute that Allied is the "prevailing party" in this case, leaving only the question of whether a fee award under Section 1451(e) is appropriate. (*See* ECF No. 109 at 5–6 (the Fund conceding that Allied was the prevailing party).) In deciding whether to recommend an award of fees to Allied, the R&R employed the standard articulated by Third Circuit in *Dorn's*, which expressly established "the standard for awarding attorneys' fees to prevailing employers under the fee-shifting provision of MPPAA, 29 U.S.C. § 1451(e)." 799 F.2d at 50. Allied now objects to the application of *Dorn's* in this case, but, curiously, it does not dispute that *Dorn's* establishes the governing standard in this circuit. (Obj. at 2–3.) Rather, Allied asserts that the R&R should have applied the Third Circuit's five-factor test from *Ursic*. (*Id.*) In support of this position, Allied notes that courts typically apply the *Ursic* factors when making fee-award determinations under 29 U.S.C. § 1132(g)(2)—a different ERISA fee-shifting provision with similar language to Section 1451(e)—and that "[a]ll Circuit Courts . . . except the Third Circuit[] have held that the

standard [for fee-award applications] should be the same under" these respective ERISA provisions. (*Id.* at 3.) In other words, Allied argues the R&R should have applied *Ursic* notwithstanding the Third Circuit's superseding precedent in *Dorn's* because, in Allied's opinion, the Third Circuit's decision in *Dorn's* was wrong. (*Id.* at 3–5.)

Allied's objection is self-defeating. As the R&R correctly recognized—and as Allied itself concedes—*Dorn's* establishes "the standard for an award of attorneys' fees under MPPAA to employers who prevail in a suit seeking a determination of their withdrawal liability thereunder," which reflects the subject circumstances of this case. (R&R at 6 (quoting *Dorn's*, 799 F.2d at 46); *see* Obj. at 3–4.) Application of the *Dorn's* standard is consistent with the approach of other cases in this District involving similar attorney's fees disputes under Section 1451. *See, e.g.*, *RTI Restoration Techs., Inc. v. Int'l Painters & Allied Trades Indus. Pension Fund*, No. 22-02364, 2025 WL 2753545, at *2 (D.N.J. Sept. 26, 2025); *Einhorn v. M.L. Ruberton Const. Co.*, 720 F. Supp. 2d 639, 642 (D.N.J. 2010). The R&R employed the correct standard in its review of Allied's motion, and the Court will review Allied's objections insofar as they relate to the R&R's application of that standard.[4]

### B. THE R&R PROPERLY DENIED FEES UNDER *DORN'S*

A court may award attorney's fees to a prevailing employer in an MPPAA action "only if the Plan's assessment of withdrawal liability was frivolous, unreasonable or without foundation."

---

[4] The Court also notes that Allied does not show how the *Ursic* factors would support an award of fees in this case. Although the Court will review this argument for the sake of completeness, *see infra* Section III.B, the Court finds Allied plainly failed to develop and therefore forfeited this argument. *See John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). To the extent Allied submits its one-sentence reference to arguments made in "earlier submissions" constitutes a properly presented argument, (*see* Obj. at 4), this too is insufficient, particularly since this single sentence fails to specify what proposition these filings are intended to support, *see, e.g.*, *Stephens v. City of Englewood*, 689 F. App'x 710, 713 n.1 (3d Cir. 2017) ("While the [Appellants] purport to incorporate by reference the arguments that they asserted in virtually every filing that they made in the District Court, this is insufficient to preserve an argument" (cleaned up)).

*Dorn's*, 799 F.2d at 50 (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). In assessing frivolity, courts consider several non-exhaustive factors, "including whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial[,] or the case continued until a trial on the merits." *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001) (citing *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997)). Additionally, courts may consider whether "the question in issue was one of first impression requiring judicial resolution," and whether "the controversy is based sufficiently upon a real threat of injury to the plaintiff." *Id.* "These factors are, however, guideposts, not hard and fast rules[,]" and "[d]eterminations regarding frivolity are to be made on a case-by-case basis." *L.B. Foster Co.*, 123 F.3d at 751 (internal quotation marks omitted). Equally important, courts must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a [party] did not ultimately prevail his action must have been unreasonable or without foundation." *Barnes*, 242 F.3d at 158 (quoting *Christiansburg*, 434 U.S. at 421–22).

The R&R found Allied was not entitled to an award of fees under Section 1451(e). (R&R at 9.) In support of this finding, the R&R explained that "[i]t was not until the Third Circuit issued its decision on the Fund's appeal that it became clear that prejudice and, indeed the laches defense, have no place in the withdrawal liability calculus[.]" (*Id.* at 10.) Accordingly, the R&R determined that this "significant shift in the law . . . could not have been reasonably anticipated or foreseen," so even though the Fund did not ultimately prevail, its assessment of withdrawal liability under the old laches framework was not so "frivolous, unreasonable, or without foundation" as to entitle Allied to fees. (*Id.* at 11 (internal citation omitted).)

In its opening brief objecting to the R&R, Allied appears to rest exclusively on its (now-

rejected) argument that the R&R should have applied the *Ursic* factors. Allied does not object to the R&R's finding that that the Fund could not have reasonably anticipated the shift in the law as to the relationship between laches and Section 1399(b)'s "as soon as practicable" requirement. (*See generally* Obj.; R&R at 10–11.) The Court independently agrees that the law on this point was only made clear *after* the Third Circuit's decision in this case, and therefore the Fund cannot be faulted for failing to anticipate this change. *See RTI*, 169 F.4th at 147 (addressing claim that the MPPAA's "timeliness requirement" is the same as the "equitable defense of laches" and explaining "it is more than that *after Allied*. It is an independent statutory requirement") (emphasis added). Accordingly, the Court rejects Allied's objections, if any, that the Fund acted frivolously, unreasonably, or without foundation by previously taking positions in this case that were consistent with the old laches framework.

As for alternative arguments, Allied makes only a conclusory statement that, "[e]ven [if] the *Dorn's* standard applies, [Allied] is entitled to at least some portion of its requested fees." (Obj. at 4.) Allied only appears to develop this alternative claim in its reply brief, where it notes in a single paragraph—devoid of citation—that the Fund "conceded that it failed to act as soon as practicable," that the twelve-year delay was "patently prejudic[ial]," and that the action was "frivolous on its face." (Reply at 1.) Given the most meritorious reading,[5] Allied appears to argue the R&R erred because the Fund's twelve-year delay was so clearly prejudicial that, even under

---

[5] Ordinarily, "an argument consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997). Similarly, Allied's failure to develop this alternative argument until its reply brief presents grounds for rejecting this claim. *See Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.2 (D.N.J. 1999) ("A moving party may not raise new issues . . . in a reply brief that it should have raised in its initial brief."); *McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1183 (3d Cir. 1990) ("[I]t would be manifestly unfair to permit an appellant to interject issues to which the appellee cannot now respond."). However, for the avoidance of all doubt on this issue, the Court considers this alternative argument without the advantage of substantive briefing.

the old laches framework, the decision to bring this withdrawal liability claim in the first instance was "frivolous, unreasonable, or without foundation," thus entitling Allied to fees under *Dorn's*. 799 F.2d at 50.

The Court disagrees. A finding of unreasonable *delay* under Section 1399(b) does not, as Allied suggests, compel the conclusion that the substantive withdrawal liability *assessment* by the Fund was unreasonable under *Dorn's*. The reasonableness of a plan sponsor's delay in issuing a withdrawal liability assessment turns on Section 1399(b)'s "as soon as practicable" requirement, and critically, this provision "sets no rigid timeframe." *Allied*, 107 F.4th at 196. Indeed, the Third Circuit in *Allied* explained that Section 1399(b) embodies a "looser" timeliness standard that "bespeaks a deliberate legislative choice to afford some flexibility" to a plan when gathering the information necessary to make its initial assessment. *Id.* (quoting *Bay Area Laundry*, 522 U.S. at 205). This looser, flexible standard for discerning the timeliness of a withdrawal liability assessment militates against concluding the Fund acted frivolously, unreasonably, or without foundation merely by pursuing this claim after its twelve-year delay, even if that delay was ultimately found to be untimely. *See, e.g.*, *RTI Restoration Techs., Inc.*, 2025 WL 2753545, at *4 (concluding the fund's argument that its assessment was timely despite eight-year delay was, "[a]t worst . . . weak with little chance of success, rather than frivolous with no chance of success" because the MPPAA "sets no rigid timeframe for the as soon as practicable requirement" (internal quotation marks and citation omitted)). Moreover, this Court cannot conclude Allied is entitled to fees based on "the mere fact that the [Fund] did not prevail," *Dorn's*, 799 F.2d at 50, particularly since "the question in issue was one of first impression requiring judicial resolution," *Barnes*, 242 F.3d at 158. The Court therefore rejects Allied's objections to the R&R and concludes it is not entitled to an award of fees under 29 U.S.C. § 1451(e).

To be sure, the Court finds that even if it were to apply *Ursic*, as Allied urges, the outcome here would not change. Under the five-factor *Ursic* test, courts consider "(1) the offending part[y's] culpability or bad faith; (2) the ability of the offending part[y] to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending part[y]; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." *Ursic*, 719 F.2d at 673. As with the *Dorn's* standard, however, "courts exercise cautiously the discretionary power to award fees" when "the prevailing party in a withdrawal liability suit is the employer." *Anita Founds., Inc. v. ILGWU Nat. Ret. Fund*, 902 F.2d 185, 187 (2d Cir. 1990) (citing, *inter alia*, *Dorn's*, 799 F.2d at 49–51). Thus, in practice, "the five factors will often balance against an employer seeking fees under ERISA and the MPPAA." *See id.* at 188–89 (citing cases).

So too here. For the reasons already explained, the Fund did not act in bad faith by bringing this withdrawal liability in the first instance, and it cannot be said that the Fund's position throughout this litigation was any less meritorious than Allied's merely because the law ultimately shifted in Allied's favor. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 767 (6th Cir. 1987) (reversing ERISA fee award under same five-factor test because the Fund, while ultimately unsuccessful in its claim, "took a colorable legal position in [an] uncertain area of the law" and "would likely have been successful" but for an intervening change in the law). Likewise, the Court observes no beneficial deterrent effect in punishing a litigant for their failure to anticipate a significant shift in the law. *See id.* (noting "the Fund has not engaged in any conduct which should be deterred"). The Court finds these first three factors countenance strongly in favor of denying an award of attorney's fees irrespective of the remaining two factors. *See id.* ("While the Fund might well be able to afford an award of attorney fees in some amount, it is clear that the

Fund displayed no culpability or bad faith."); *see also 191 Mar-Can Transp. Co., Inc. v. Loc. 854 Pension Fund*, No. 20-8743, 2026 WL 2566463, at *5 (S.D.N.Y. Aug. 31, 2026) ("[T]he fifth factor 'has been described in terms of the benefit conferred on pension plan participants and is not wholly applicable where it is the employer seeking fees.'" (quoting *Anita*, 902 F.2d at 191)). Accordingly, even if this Court resolved this matter under *Ursic*, it would find Allied is not entitled to an award of fees.

## CONCLUSION

For the reasons set forth above, the Report and Recommendation is **ADOPTED**, and Allied's motion for attorney's fees is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: October 5, 2026